**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**COLUMBIA DIVISION**

BRANDI ROSEMOND,

*Plaintiff*,

v.

EMILY FARR, in her official capacity as director of the South Carolina Department of Labor, Licensing & Regulation; TRACY ADAMS, in her official capacity as board executive for the South Carolina Board of Cosmetology; and LAQUITA CLARK-HORTON, ASHLEY JOHNSON, TIFFINY JONES, TOVAH LEWIS, ELIZABETH PISTOLIS, and SHERRIE TODD, in their official capacities as members of the South Carolina Board of Cosmetology,

*Defendants*.

Civil Case No. 3:26-cv-3925-SAL

# COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## INTRODUCTION

1. Plaintiff Brandi Rosemond challenges South Carolina's unconstitutional ban on mobile and portable esthetics services (i.e., beauty services including make-up, eyebrow styling, and facials). Brandi brings this civil-rights action to vindicate her rights under the Fourteenth Amendment to the U.S. Constitution.

2. Brandi embodies the American entrepreneurial spirit. Although she did not grow up wealthy, Brandi had a dream of opening her own luxury mobile beauty salon. She graduated from a state-approved esthetics school, passed the state-required licensing exam, and became a licensed esthetician. She bought an RV and spent time and money transforming it into a mobile salon. She posted on social media that she was eager to finally make her dream a reality and start serving customers in her mobile salon—until state regulators told her that was illegal.

3. South Carolina regulates various personal appearance occupations, but the way it does so here is irrational and thus unconstitutional. Specifically, South Carolina requires beauty services professionals like cosmetologists and estheticians to work in fixed-location salons. They are generally banned from working in mobile salons or through portable operations. *See* S.C. Code Ann. § 40-13-110(A)(6); S.C. Code Ann. Regs. § 35-20(B)(1). That's true even though there is significant demand for mobile beauty services—such demand, in fact, that there's a thriving gray market for these services and only selective enforcement.

4. South Carolina's ban is irrational. There is no legitimate public health or safety justification for banning licensed estheticians from working outside of fixed-location salons. Especially when South Carolina law treats similar personal appearance professionals—licensed barbers—preferentially by allowing their services outside of fixed-location shops.

5. Unlike licensed estheticians, licensed barbers are legally allowed to work in mobile units or in clients' homes, businesses, or wedding and other event venues. They just have to follow

regulations ensuring they meet the same health and sanitation standards as barbers working in fixed-location shops. All of this means that barbers are allowed to do what estheticians may not—even though the statutory definitions of these occupations substantially overlap and even though barbers and estheticians must adhere to nearly identical health and sanitation standards.

6. Not only is that irrational, it has also produced absurd results. In South Carolina, a barber is legally allowed to shave a beard outside of a fixed-location shop, but an esthetician is banned from tweezing or waxing eyebrows outside of a fixed-location salon. A barber is legally allowed to apply lotions and creams outside of a fixed-location shop, but an esthetician is banned from applying make-up outside of a fixed-location salon. None of this makes any sense. Brandi merely seeks the same freedom that barbers already enjoy—the right to earn a living where she chooses free from irrational state regulations. The equal protection, due process, and privileges or immunities clauses of the Fourteenth Amendment to the U.S. Constitution protect that freedom.

**JURISDICTION AND VENUE**

7. Plaintiff sues under the Fourteenth Amendment to the U.S. Constitution; the Civil Rights Act of 1871, 42 U.S.C. § 1983; and the Declaratory Judgment Act, 28 U.S.C. § 2201. She seeks declaratory and injunctive relief against enforcement of South Carolina's ban on mobile beauty services, S.C. Code Ann. § 40-13-110(A)(6) and S.C. Code Ann. Regs. § 35-20(B)(1), and against the policies and practices of the South Carolina Department of Labor, Licensing & Regulation and the South Carolina Board of Cosmetology enforcing that unconstitutional ban.

8. This Court has jurisdiction under 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1343(a)(3) (civil rights jurisdiction).

9. Venue is proper under 28 U.S.C. § 1391(b)(1) and L.R. 3.01(A)(1) because, as described below, all Defendants reside in this district and division.

## PARTIES

10. Plaintiff Brandi Rosemond is a South Carolina-licensed esthetician who resides in Greenville, South Carolina, and wants to run a mobile beauty salon and offer portable esthetics services. She challenges South Carolina's ban on mobile and portable esthetics services, S.C. Code Ann. § 40-13-110(A)(6) and S.C. Code Ann. Regs. § 35-20(B)(1), both facially and as applied to her, under the Fourteenth Amendment's equal protection, due process, and privileges or immunities clauses.

11. Defendant Emily Farr is the director of the South Carolina Department of Labor, Licensing & Regulation ("LLR") and, along with co-defendants, enforces the ban on mobile and portable beauty services and administers the South Carolina Board of Cosmetology ("Cosmetology Board"). S.C. Code Ann. §§ 40-1-40(B), -80, -90. She is sued in her official capacity only and thus resides in Columbia, South Carolina, where LLR is based.

12. Defendant Tracy Adams is the LLR board executive for the Cosmetology Board, and, along with co-defendants, enforces the ban on mobile and portable beauty services and administers the Cosmetology Board. S.C. Code Ann. §§ 40-1-40(B), -80, -90. She is sued in her official capacity only and thus resides in Columbia, South Carolina, where LLR is based.

13. Defendant LaQuita Clark-Horton is a member of the Cosmetology Board and, along with co-defendants, enforces the ban on mobile and portable beauty services. S.C. Code Ann. §§ 40-1-20(3), -80, -90, -100. She is sued in her official capacity only and thus resides in Columbia, South Carolina, where the Cosmetology Board is based.

14. Defendant Ashley Johnson is a member of the Cosmetology Board and, along with co-defendants, enforces the ban on mobile and portable beauty services. S.C. Code Ann. §§ 40-1-20(3), -80, -90, -100. She is sued in her official capacity only and thus resides in Columbia, South Carolina, where the Cosmetology Board is based.

15. Defendant Tiffiny Jones is a member of the Cosmetology Board and, along with co-defendants, enforces the ban on mobile and portable beauty services. S.C. Code Ann. §§ 40-1-20(3), -80, -90, -100. She is sued in her official capacity only and thus resides in Columbia, South Carolina, where the Cosmetology Board is based.

16. Defendant Tovah Lewis is a member of the Cosmetology Board and, along with co-defendants, enforces the ban on mobile and portable beauty services. S.C. Code Ann. §§ 40-1-20(3), -80, -90, -100. She is sued in her official capacity only and thus resides in Columbia, South Carolina, where the Cosmetology Board is based.

17. Defendant Elizabeth Pistolis is a member of the Cosmetology Board and, along with co-defendants, enforces the ban on mobile and portable beauty services. S.C. Code Ann. §§ 40-1-20(3), -80, -90, -100. She is sued in her official capacity only and thus resides in Columbia, South Carolina, where the Cosmetology Board is based.

18. Defendant Sherrie Todd is a member of the Cosmetology Board and is charged with enforcing the ban on mobile beauty services. S.C. Code Ann. §§ 40-1-20(3), -80, -90, -100. She is sued in her official capacity only and thus resides in Columbia, South Carolina, where the Cosmetology Board is based.

## STATEMENT OF FACTS

***South Carolina licenses and regulates cosmetologists, estheticians, and barbers.***

19. South Carolina requires licensure for various personal appearance occupations, including for cosmetology and subsets of cosmetology, like esthetics, and for barbering.

20. South Carolina law defines "cosmetology" as:

> engaging in any of these practices or a combination of these practices when done for compensation either directly or indirectly:
>
> a. arranging, styling, thermal curling, chemical waving, pressing, shampooing, cutting, shaping, chemical bleaching, chemical coloring,

chemical relaxing, or similar work, upon the hair, wig, or hairpiece of any person, by any means, with hands or mechanical or electrical apparatus or appliances;

b. using cosmetic preparations, make-up, antiseptics, lotions, creams, chemical preparations on, or otherwise, or waxing, tweezing, cleansing, stimulating, manipulating, beautifying, or similar work on the scalp, legs, feet, face, neck, arms, hands; or

c. manicuring or pedicuring the nails of a person or similar work.

S.C. Code Ann. § 40-13-20(2).

21. Esthetics is a narrower category within cosmetology, with an esthetician defined as a person "who is licensed to practice skin care, make-up, or similar work," where the skin care is "for the sole purpose of beautifying the skin." S.C. Code Ann. § 40-13-20(5). *See also* S.C. Code Ann. Regs. § 35-20(A)(2) (noting "esthetics" is one of the "[c]osmetology related professions").

22. Regulations further clarify that estheticians must be trained in facial treatments including massage, electrical current treatments, and other treatments; various types of hair removal including depilatories, tweezing, waxing, and threading; make-up; and body wraps. S.C. Code Ann. Regs. § 35-3(C)(3)–(6) (minimum curriculum requirements for esthetics schools).

23. South Carolina law defines barbering as:

any one or a combination of:

a. shaving or trimming a beard, cutting the hair, or hairstyling;

b. giving facial or scalp massages or treatments with oils, creams, lotions, or other preparations, either by hand or mechanical appliances;

c. singeing, shampooing, or dyeing the hair or applying hair tonics or chemicals to wave, relax, straighten, or bleach the hair;

d. applying cosmetic preparations, antiseptics, powders, oils, clays, and lotions to the scalp, neck, or face;

e. cutting, shaping, fitting, styling, and servicing hair pieces, toupees, and wigs.

S.C. Code Ann. § 40-7-20(1).

24. There is significant overlap in the practices that define cosmetology and barbering under South Carolina law:

| **Overlap in South Carolina's Statutory Definitions of Cosmetology & Barbering** | | |
|---|---|---|
| **Practices** | **Cosmetology** | **Barbering** |
| Cutting/shaping/trimming/hair | "cutting, shaping, . . . or similar work, upon the hair" S.C. Code Ann. § 40-13-20(2)(a) | "cutting the hair" S.C. Code Ann. § 40-7-20(1)(a) |
| Cutting/shaping/removing/ trimming facial hair | "waxing, tweezing, . . . or similar work on the . . . face" S.C. Code Ann. § 40-13-20(2)(b) | "shaving or trimming a beard" S.C. Code Ann. § 40-7-20(1)(a) |
| Hairstyling/arranging | "arranging, styling, . . . or similar work, upon the hair" S.C. Code Ann. § 40-13-20(2)(a) | "hairstyling" S.C. Code Ann. § 40-7-20(1)(a) |
| Shampooing hair | "shampooing . . . or similar work, upon the hair" S.C. Code Ann. § 40-13-20(2)(a) | "shampooing . . . the hair" S.C. Code Ann. § 40-7-20(1)(c) |
| Chemical waving/relaxing/ straightening | "chemical waving, . . . chemical relaxing, or similar work, upon the hair" S.C. Code Ann. § 40-13-20(2)(a) | "applying hair tonics or chemicals to wave, relax, straighten, or bleach the hair" S.C. Code Ann. § 40-7-20(1)(c) |
| Chemical bleaching/coloring/ dyeing hair | "chemical bleaching, chemical coloring, . . . or similar work, upon the hair" S.C. Code Ann. § 40-13-20(2)(a) | "dyeing the hair or applying hair tonics or chemicals to . . . bleach the hair" S.C. Code Ann. § 40-7-20(1)(c) |

| | | |
|---|---|---|
| Facial massages/treatments (oils, creams, lotions) | "using cosmetic preparations, . . . lotions, creams, . . . on, or otherwise, or . . . stimulating, manipulating, beautifying, or similar work on the . . . face" S.C. Code Ann. § 40-13-20(2)(b) | "giving facial . . . massages or treatments with oils, creams, lotions, or other preparations, either by hand or mechanical appliances" S.C. Code Ann. § 40-7-20(1)(b) |
| Scalp massages/treatments | "using cosmetic preparations, . . . lotions, creams, . . . on, or otherwise, or . . . stimulating, manipulating, beautifying, or similar work on the scalp" S.C. Code Ann. § 40-13-20(2)(b) | "applying cosmetic preparations, antiseptics, powders, oils, clays, and lotions to the scalp, neck, or face" S.C. Code Ann. § 40-7-20(1)(d) |
| Applying cosmetic preparations to scalp, neck, face | "using cosmetic preparations, make-up . . . on, or otherwise, or . . . beautifying, or similar work on the scalp, . . . face, neck" S.C. Code Ann. § 40-13-20(2)(b) | "applying cosmetic preparations, antiseptics, powders, oils, clays, and lotions to the scalp, neck, or face" S.C. Code Ann. § 40-7-20(1)(d) |
| Applying cosmetic preparations to scalp/ neck/face | "using cosmetic preparations, make-up . . . on, or otherwise, or . . . beautifying, or similar work on the scalp, . . . face, neck" S.C. Code Ann. § 40-13-20(2)(b) | "applying cosmetic preparations, antiseptics, powders, oils, clays, and lotions to the scalp, neck, or face" S.C. Code Ann. § 40-7-20(1)(d) |
| Cutting, fitting, styling, servicing wigs/hairpieces/ toupees | "arranging, styling, thermal curling, chemical waving, pressing, shampooing, cutting, shaping, chemical bleaching, chemical coloring, chemical relaxing, or similar work, upon . . . [a] wig, or hairpiece of any person" S.C. Code Ann. § 40-13-20(2)(a) | "cutting, shaping, fitting, styling, and servicing hair pieces, toupees, and wigs" S.C. Code Ann. § 40-7-20(1)(e) |

25. Because esthetics is a subset of cosmetology, all esthetics services also constitute the practice of cosmetology under South Carolina law. Thus, there is also significant overlap in the practices that define esthetics and barbering under South Carolina law:

| **Overlap in South Carolina's Statutory & Regulatory Definitions of Esthetics & Barbering** | | |
|---|---|---|
| **Practices** | **Esthetics** | **Barbering** |
| Shaping or removing facial hair | "waxing, tweezing, . . . or similar work on the . . . face" S.C. Code Ann. § 40-13-20(2)(b)<br><br>"Hair Removal" is part of the minimum curricular requirements of esthetics schools, including "Tweezing" and "Waxing." S.C. Code Ann. Regs. § 35-3(C)(4). | "shaving or trimming a beard" S.C. Code Ann. § 40-7-20(1)(a) |
| Facial massages/treatments (oils, creams, lotions) | "using cosmetic preparations, . . . lotions, creams, . . . on, or otherwise, or . . . stimulating, manipulating, beautifying, or similar work on the . . . face" S.C. Code Ann. § 40-13-20(2)(b)<br><br>"skin care, make-up, or similar work" S.C. Code Ann. § 40-13-20(5)<br><br>"Facial Treatments," including "Facial Massage," are part of the minimum curricular requirements of esthetics schools. S.C. Code Ann. Regs. § 35-3(C)(3). | "giving facial . . . massages or treatments with oils, creams, lotions, or other preparations, either by hand or mechanical appliances" S.C. Code Ann. § 40-7-20(1)(b) |

| | | |
|---|---|---|
| Applying cosmetic preparations antiseptics, powders, oils, clays, or lotions to the face or neck | "using cosmetic preparations, make-up . . . on, or otherwise, or . . . beautifying, or similar work on the . . . face [or] neck" S.C. Code Ann. § 40-13-20(2)(b)<br><br>"skin care, make-up, or similar work" S.C. Code Ann. § 40-13-20(5)<br><br>"Facial Treatments," "Makeup," and "Body Wraps" are part of the minimum curricular requirements of esthetics schools. S.C. Code Ann. Regs. § 35-3(C)(3), (5), (6). | "applying cosmetic preparations, antiseptics, powders, oils, clays, and lotions to the scalp, neck, or face" S.C. Code Ann. § 40-7-20(1)(d) |

26. Plainly put, estheticians do work very similar to some of the work barbers do. For example, both barbers and estheticians can apply creams and other cosmetic products to the face. S.C. Code Ann. §§ 40-7-20(1)(d), 40-13-20(2). Likewise, both barbers and estheticians can remove hair from the face. *Id.* §§ 40-7-20(1)(a), 40-13-20(2); S.C. Code Ann. Regs. § 35-3(C)(4).

27. South Carolina requires licensure to engage in these occupations.

28. Licensure in each of these occupations—cosmetology, esthetics, and barbering—requires coursework and examinations. *See* S.C. Code Ann. § 40-13-230(A)(2)–(3) (cosmetology); *id.* § 40-13-230(B)(2)–(3) (esthetics); *id.* § 40-7-230(C)(2)–(3) (barbering).

29. For licensure, a cosmetologist must take 1,500 hours of coursework and pass an exam. S.C. Code Ann. § 40-13-230(A)(2)–(3).

30. An esthetician must take 450 hours of coursework and pass an exam. *Id.* § 40-13-230(B)(2)–(3).

31. And a barber may train for 1,920 hours under a licensed barber, take 1,500 hours of coursework in an approved barber college program, or take 1,540 hours of coursework in an

approved high school program, and pass an exam. S.C. Code Ann. § 40-7-230(C)(2)–(4); S.C. Board of Barber Exam'rs, Licensure, https://perma.cc/ZK7S-VTS7.

32. In addition to licensure requirements, these occupations must also follow facility, equipment, and sanitation regulations.

33. Because esthetics is regulated as a subset of cosmetology, all salons offering esthetics services must meet the same requirements as cosmetology salons, including:

a. stocking enough "EPA-registered hospital level disinfectant with demonstrated bactericidal, fungicidal, pseudomonacidal and virucidal activity used according to manufacturer's instructions" to "totally immerse implements," S.C. Code Ann. Regs. § 35-16(A)(1);

b. stocking a "[s]harps container for the disposal of used and/or contaminated implements" and that such "containers must be disposed of according to local bio-hazard disposal requirements," *id.* § 35-16(A)(2);

c. having "direct access" to hot and cold running water; restroom facilities; a closed cabinet for clean linens storage; storage for soiled linen; a fire extinguisher; a first aid kit; and covered trash containers, *id.* §§ 35-16(B)(1)–(7); and

d. providing "equipment as is necessary to offer those services available in the salon in a safe and sanitary manner," *id.* § 35-16(B).

34. Estheticians must also follow extensive sanitation and safety rules. *See generally* S.C. Code Ann. Regs. § 35-20. In fact, all estheticians are "individually liable for implementation and maintenance of the sanitary rules applicable to them." *Id.* § 35-20(A)(1).

35. Estheticians must keep their work areas clean and sanitary, *see generally* S.C. Code Ann. Regs. § 35-20, including specific requirements to:

a. wash their hands between customers, *id.* § 35-20(G);

b. sterilize tools and discard towels between customers, *id.* § 35-20(I)–(J), (M);

c. discard single-use implements and products, *id.* § 35-20(H);

d. keep all products in closed and labeled containers, *id.* § 35-20(K)(1);

e. abstain from serving customers with contagious conditions, *id.* § 35-20(F); and

f. provide access to inspectors and pass inspections, *id.* § 35-20(A)(3), (5).

36. Many of these requirements are nearly identical to those imposed on fixed-location barbershops and barbers.

37. Fixed-location barbershops must sterilize instruments or appliances that come into contact with patrons "by immersing [them] in a solution of at least a sixty percent alcohol solution or an EPA registered disinfectant." S.C. Code Ann. Regs. § 17-50(8). They must also have spaced out and functional mechanical chairs, finished walls and floors, good lighting and airflow, bathrooms, hot and cold running water, cabinets for clean towels, bins for dirty towels, and a fire extinguisher. *Id.* §§ 17-20, -50.

38. The regulations specify that "[a]ll equipment used in connection with serving a patron shall be maintained in a clean and sanitary manner," S.C. Code Ann. Regs. § 17-50(8), and further specify that certain instruments and facilities must "be kept clean and sanitary at all times." *Id.* § 17-50(4), (9), (10), (14).

39. Barbers must follow extensive sanitation and safety rules, *see generally* S.C. Code Ann. Regs. § 17-50, including specific requirements to:

a. wash their hands between customers, *id.* § 17-50(15);

b. sterilize instruments and discard towels between customers, *id.* § 17-50(8), (12); *see also id.* § 17-50(13);

c. maintain supplies and products in sanitary conditions, including replacing them between customers when appropriate, *see id.* § 17-50(8)–(13);

d. abstain from treating customers with "any disease of the skin" or from shaving "any person when the surface to be shaved is inflamed or broken out, or contains pus" under most circumstances, *id.* § 17-50(17)–(18); and

e. remain "open for inspection at all times during business hours," *id.* § 17-50(1); *see also id.* § 17-50(21)–(22).

40. South Carolina's health and safety regulations for esthetics and barbering are materially the same because the State has determined that the two occupations present materially the same health and safety risks. The State's own rules are its judgment about relative risk.

| **Overlap in South Carolina's Health and Safety Regulations for Esthetics and Barbering** | | |
|---|---|---|
| **Regulations** | **Esthetics** | **Barbering** |
| Disinfectant/sterilizing solution | "Disinfectant (wet), large enough to totally immerse implements, with an EPA-registered hospital level disinfectant with demonstrated bactericidal, fungicidal, pseudomonacidal and virucidal activity used according to manufacturer's instructions" S.C. Code Ann. Regs. § 35-16(A)(1) | "sterilized by immersing in a solution of at least a sixty percent alcohol solution or an EPA registered disinfectant" S.C. Code Ann. Regs. § 17-50(8) |
| Access to hot and cold water | "direct access to . . . Hot and Cold Running Water" S.C. Code Ann. Regs. § 35-16(B)(1) | "supply of hot and cold running water . . . under pressure in such quantities as may be necessary to provide the service . . . in a safe and sanitary manner" S.C. Code Ann. Regs. § 17-50(5) |
| Handwashing | "Every person performing cosmetology or related services . . . must thoroughly clean his or her hands with soap and water or any equally effective hand sanitizer before serving each patron." S.C. Code Ann. Regs. § 35-20(G) | "Every person serving as a barber shall thoroughly cleanse his or her hands immediately before serving each customer." S.C. Code Ann. Regs. § 17-50(15) |

| | | |
|---|---|---|
| Sterilizing instruments/ discarding towels between customers | "Before use upon a patron, all non-electrical, non-porous implements, instruments, and accessories used in the practice of . . . esthetics must be disinfected in [this specified] manner . . ." S.C. Code Ann. Regs. § 35-20(I)<br><br>"Used, disposable towels must be discarded. After a cloth towel has been used once, it must be deposited in a closed, vented receptacle, labeled 'soiled linens' and shall not be used again until properly laundered." S.C. Code Ann. Regs. § 35-20(M)(1) | "All equipment used in connection with serving a patron shall be maintained in a clean and sanitary manner. Instruments or appliances of any kind which come in contact with the body of a patron shall be, before each separate use, sterilized . . ." S.C. Code Ann. Regs. § 17-50(8)<br><br>"A clean, freshly laundered towel shall be used for each patron. . . . All towels that are used on a patron must be discarded until laundered." S.C. Code Ann. Regs. § 17-50(12) |
| Single-use items/products kept sanitary | "Licensees . . . must dispose of all porous supplies or materials which come in direct contact with a patron and cannot be disinfected . . . in a covered waste receptacle immediately after their use or when the service is completed." S.C. Code Ann. Regs. § 35-20(H)<br><br>"All liquids, creams and other cosmetic preparations must be kept in clean, closed and properly labeled containers. Powders may be kept in a clean shaker." S.C. Code Ann. Regs. § 35-20(K)(1) | "All equipment used in connection with serving a patron shall be maintained in a clean and sanitary manner." S.C. Code Ann. Regs. § 17-50(8); *see also id.* § 17-50(9)–(13) (specifying certain tools "must be kept clean and sanitary") |

| | | |
|---|---|---|
| Restrictions on services to customers with contagious conditions or diseases | "Licensees must not permit any person afflicted with a known infestation of parasites or with a known infectious or communicable disease which may be transmitted during the performance of the acts of cosmetology or related professions, to work or train in a salon or in a school." S.C. Code Ann. Regs. § 35-20(F)(1)<br><br>"No salon or school may knowingly require or permit a student or person licensed by the Board of Cosmetology [may] work upon a person known to suffer from any infectious or communicable disease, which may be transmitted during the performance of the acts of cosmetology or related professions." S.C. Code Ann. Regs. § 35-20(F)(2) | "No barber shall shave any person when the surface to be shaved is inflamed or broken out, or contains pus, unless such person is provided with a cup, shaving brush and razor for his individual use. Alternatively, any implements or items used must be immediately and thoroughly cleaned, sanitized and disinfected." S.C. Code Ann. Regs. § 17-50(18) |
| Facility/equipment basics (linens, trash, fire extinguisher, first aid kit) | "All salons shall have direct access to . . .Rest Room Facilities[,] Closed Cabinet for Clean Linens Storage[,] Storage for Soiled Linen[,] Fire Extinguisher[,] First Aid Kit[,] Covered Trash Containers" S.C. Code Ann. Regs. § 35-16(B)(2)–(7) | "adequate space for clean freshly laundered towels . . . [and] an adequate container for discarding soiled towels" S.C. Code Ann. Regs. § 17-20<br><br>"easily accessible fire extinguisher" S.C. Code Ann. Regs. § 17-20<br><br>"fully-stocked first aid kit" S.C. Code Ann. Regs. § 17-50(7) |
| Inspection access | "Refusal to permit, or interference with, an inspection constitutes a cause | "All barbershops shall be open for inspection at all times during business hours |

| | | |
|---|---|---|
| | for disciplinary action." S.C. Code Ann. Regs. § 35-20(A)(3) | to any members of the Board of Barber Examiners, or its agents or assistants." S.C. Code Ann. Regs. § 17-50(1) |

41. If esthetics services were more dangerous than barbering services, that difference would appear in the standards governing fixed-location practice. It does not. South Carolina does not require an esthetician applying make-up to a client's face to take any precaution that it does not also require of a barber drawing a straight razor across a client's neck.

42. But the regulations governing barbering differ significantly from those governing esthetics in one aspect: In addition to being able to operate in fixed-location barbershops, barbers may also work in mobile barbershops or through portable operations. *See generally* S.C. Code Ann. Regs. §§ 17-21, -22.

43. A mobile barbershop "must be a self-contained unit sufficiently equipped to provide barbering services within the premises of the mobile shop." S.C. Code Ann. Regs. § 17-21(a). Additionally, "[n]o service may be performed on a patron in a moving vehicle" and "[a]ll fixtures in a mobile unit must be firmly anchored to the floor." *Id.* § 17-21(b).

44. The requirements for mobile barbershops resemble those for fixed-location barbershops:

> Each barber shall be provided with a securely anchored cabinet, constructed of such material that it may be easily cleaned, consisting of adequate space for clean freshly laundered towels, and each barber shall be provided with an adequate container for discarding soiled towels; each barber chair shall be securely anchored, mechanically workable and have a good grade of upholstery which is unbroken, torn or ripped. A mobile barbershop shall have adequate and functional sink and toilet facilities within the mobile shop, to include a holding tank with adequate wastewater storage; it shall be well lighted and ventilated; and the mobile barbershop shall not be used for any purposes other than providing barbering services. A mobile shop must also have a working, easily accessible fire extinguisher.

S.C. Code Ann. Regs. § 17-21(c).

45. The regulatory chapter on sanitary rules governing barbers and barbershops applies with equal force to mobile barbering: "A mobile barbershop must comply with all sanitary rules set out [in this section]." S.C. Code Ann. Regs. § 17-50.

46. In light of the requirements that all barbershops "provide a supply of hot and cold running water," S.C. Code Ann. Regs. § 17-50(5), the regulations specify that mobile barbershops "must immediately cease operation when (1) wastewater storage capacity has been reached; (2) the toilet or sink are non-functioning; or (3) the mobile shop no longer has an adequate supply of clean hot and cold running water, or adequate wastewater capacity for safely completing all barbering services." *Id.* § 17-50(6).

47. In other words, South Carolina regulators recognize that mobile barbers can and do meet all the same sanitation requirements as fixed-location barbers. *See generally* S.C. Code Ann. Regs. § 17-50.

48. The regulations also allow barbers to provide their services through a "portable barber operation," which is when a barber "provide[s] barbering services in a client's home or place of residence, either permanent or temporary, a client's office or other place of business, wedding or other event venues, or other locations." S.C. Code Ann. Regs. § 17-22(a).

49. Portable barbers must meet certain minimum equipment requirements:

> a means of cleaning his or her hands prior to beginning the service, a first aid kit capable of dealing with blood exposure, sanitary capes or drapes, clean towels, sanitized and disinfected barbering implements and tools, a closed container with a sufficient supply of either at least a sixty percent alcohol solution or an EPA-registered disinfectant, and a means of transporting clean and used implements separately.

S.C. Code Ann. Regs. § 17-22(c). And "[n]o equipment or implement can be used on a subsequent client without it first being properly cleaned, sanitized and disinfected." *Id.*

50. Portable barbers must also verify that "there is an adequate supply of hot and cold running water available on the premises [where services are being provided] to safely and sanitarily complete the service to be provided." S.C. Code Ann. Regs. § 17-22(d).

51. The sanitation requirements for portable barbers are similar to those for fixed-location barbers: washing hands between customers, sterilizing instruments and discarding towels between customers, and maintaining supplies in sanitary conditions—including replacing them between customers. S.C. Code Ann. Regs. § 17-22(c). They must also maintain records of where services are provided that are subject to inspection. *Id.* § 17-22(e).

52. Simply put, the regulations implicitly recognize that barbers can safely provide their services—many of which are statutorily and practically indistinguishable from beauty services like esthetics, *see supra* ¶¶ 24–25—in mobile barbershops or through portable operations.

53. But no such options are available for estheticians.

***Entrepreneur Brandi Rosemond works to become a licensed esthetician and plans to run a mobile esthetics salon and offer portable esthetics services.***

54. Brandi Rosemond is a life-long Greenville resident who dreams of running her own business providing convenient beauty services.

55. Brandi has a passion for skincare that she learned from her grandmother, whom Brandi watched and learned from growing up.

56. That passion led her to dream of working as an esthetician providing beauty services, especially to other women in Greenville.

57. Though she knew she wanted to study esthetics to open her own business, she made the financially responsible decision to wait until she was twenty-five to start studying so that she would be eligible to apply for financial aid without having to burden her parents.

58. Meanwhile, Brandi worked various other jobs including as a waitress, as a model, and in sales for make-up products, and she built up a social media following that she would later use to help promote her esthetics business.

59. But once she was ready, Brandi enthusiastically pursued her esthetician's license.

60. Brandi attended the Paul Mitchell school in Greenville, which has been licensed to teach cosmetology and esthetics since 2013.

61. The Paul Mitchell school in Greenville offers a 600-hour esthetics program (which exceeds South Carolina's 450-hour requirement for licensure) with "hands-on training in classical professional techniques and skincare innovations—plus the business skills [students need] in a career as a skincare therapist." Esthetician School in Greenville, SC, Paul Mitchell, https://paulmitchell.edu/greenville/programs/esthetics.

62. The program covers technical areas like skin treatment and infection control; sanitation and safety; skin physiology; consultations and service protocols; analysis, chemistry, exfoliation, extractions; electricity and electrotherapy; ingredient and product technology; hair removal, waxing, brow design, and make-up; and South Carolina laws and regulations, *id.*—just what Brandi needed to prepare for licensure. *Cf.* Nat'l Interstate Council of State Bds. of Cosmetology, Esthetics Theory Examination Content Outline, https://perma.cc/9PZZ-XBFB (laying out the tested content in the written portion of the licensure exam); Nat'l Interstate Council of State Bds. of Cosmetology, Esthetics Practical Examination Content Outline, https://perma.cc/V8Q3-EWF7 (same, practical portion).

63. In addition to learning the theory of esthetics in the course, Brandi also got hands-on experience doing make-up, giving spray tans, giving facials (of various kinds), and practicing lash application, among other things.

64. While she was completing her coursework, Brandi was taking other preparatory steps to build the small business she planned to open upon licensure.

65. Brandi's dream is to operate a mobile esthetics salon, in her own words a "luxury mobile beauty studio," where she'd do make-up, facials, eyebrow waxing and tints, and spray tans.

66. She wanted a mobile beauty studio so that she could travel to serve parties, especially weddings and similar events.

67. Brandi's plan shows her entrepreneurial savvy: In Greenville there is high demand for beauty services from both locals and tourists, including from wedding and event parties that employ make-up artists and have the artists come to them.

68. To best meet the needs of those customers who want estheticians to come to them, Brandi is also interested in offering portable services—where she goes to the location of the customer and provides the services in their home, venue, or office.

69. While she was studying, Brandi purchased an RV that she gutted and renovated largely on her own.

70. She outfitted the RV specifically to accommodate her services—spray tans, facials, make-up, and brows.

71. For Brandi, this was a significant financial investment. Brandi spent over $15,000 buying and renovating the RV.

72. In light of the thriving gray market for make-up and other esthetics services at weddings and other event venues, Brandi believed that her vision for a mobile studio was permitted under South Carolina law so long as her studio complied with sanitation requirements. So, Brandi was careful to outfit the RV to meet such sanitation requirements. She specifically made sure that the RV had hot and cold water; lockable cabinets for products; covered waste containers and

hampers for soiled towels; all necessary equipment and tools to operate; a fire extinguisher; a first aid kit; labeled clean and dirty implements, storage container, and linens; a safety data sheet folder; and a restroom.

73. Just as she was finishing the RV, Brandi was set to graduate from the esthetics program.

74. Brandi didn't just complete the coursework. She excelled.

75. She graduated from the course with certificates of achievement for honors in both skin and make-up on January 8, 2026.

76. Brandi also completed two additional certifications, including one as an oncology skin specialist. She was especially excited that completing the oncology skin specialist certification would give her the chance to make cancer patients feel beautiful. Since some cancer patients are unable or uncomfortable traveling for these services, Brandi looked forward to providing them a more convenient mobile option.

77. Excited about her graduation and success, Brandi decided to make a celebratory post on Instagram the next day, on January 9, 2026. The post consisted of 16 pictures and brief videos documenting her graduation—her being handed her certificate of completion and honors cords, her holding up her certifications, and her with family.



78. In the post she also unveiled the project on which she had been working: the RV she had painstakingly renovated to use as a mobile beauty studio as part of her soon-to-open small business, Ayaba of Beauty. Some of the pictures, including the lead picture in the post, featured the RV, freshly wrapped with the words "Ayaba of Beauty" and "Luxury Mobile Beauty Studio" on the side.

79. In the text accompanying the post, she celebrated that she'd completed her coursework while building what she hoped would become Greenville's first mobile beauty studio.

80. She was so close to achieving her dream. The big final step left was taking and passing her licensure exam, which she was preparing for.

81. In the comments to the post, others joined Brandi in the celebration, expressing excitement for her success and for the business concept. This was a business many in Greenville were ready to patronize.

82. Just as Brandi was ready to make her dreams come true, she learned regulators wouldn't let her.

***Regulators tell Brandi that mobile esthetics services are illegal.***

83. In the midst of the congratulatory comments, Brandi also received a comment on one of her posts—followed by a Facebook message—from Ashley Johnson, the vice chair of the South Carolina Board of Cosmetology.

84. South Carolina functionally bans mobile beauty services by statute. Cosmetologists and related professions, including estheticians, are prohibited from working "in any place other than a licensed salon, except in case of an emergency including, but not limited to, illness, invalidism, or death when a licensed operator may perform services for a person in another place by appointment only." S.C. Code Ann. § 40-13-110(A)(6). And by regulation, a salon "must

occupy a separate building, or part of a building, which is suitable to render adequate sanitary services to the public." S.C. Code Ann. Regs. § 35-20(B)(1).

85. The South Carolina Board of Cosmetology, which operates under the Department of Labor, Licensing & Regulation ("LLR"), enforces this ban.

86. Among other things, the Cosmetology Board "licenses individuals who are qualified by education and/or passage of a board-approved examination into the respective modalities to perform professional cosmetology and cosmetology-related services, to include cosmetologists, estheticians, nail technicians and instructors." S.C. Bd. of Cosmetology, https://perma.cc/W94X-ZQJ4.

87. The Cosmetology Board also "receives and investigates complaints and follows through with appropriate actions against licensees who violate Cosmetology laws and regulations." *Id. See also* S.C. Code Ann. § 40-13-10 (discussing the requirements for the Cosmetology Board).

88. The message Brandi received from Johnson was a warning that Brandi's plan for a mobile salon, which Brandi thought was legal, was not contemplated under South Carolina regulations: "As of right now, there is no regulation, allowing any type of mobile cosmetology, including Esthetics."

89. Brandi responded by explaining that she was not offering esthetics services—mobile or otherwise—at the time.

90. Despite Brandi's assurances that she was not providing esthetics services, Johnson responded:

> Please be aware that this is under scrutiny by the board of cosmetology at this time. Please be very careful with your marketing and understand that you may be visited by the board of cosmetology. . . . Just a warning to be very careful and be aware I wouldn't want anything to happen to your business.

91. Brandi then thanked Johnson for the information and further explained that she had "been mindful of [the] marketing" and "will always remain fully committed to full compliance with all applicable rules and regulations."

92. But that wasn't the end of the matter.

93. Soon after, Brandi received a letter dated January 20, 2026, and styled as a "Notice of Complaint" from the LLR. The letter said the LLR had received a complaint from Tracy Adams—a staffer for the Cosmetology Board—that Brandi was "unlicensed and operating an unlicensed mobile cosmetology salon."

94. After receiving the letter, Brandi emailed the investigator assigned to the matter to provide clarifying information.

95. In her email, Brandi clarified and reiterated that she was "not offering or performing any esthetic[s] or cosmetology services at t[hat] time" and that she "ha[d] not operated a cosmetology or esthetics business." She explained that "[a]ny activity to date ha[d] been marketing only, related to [her] recent graduation and general promotion of a future business concept."

96. She noted that she was scheduled to take her licensure test and that she understood "no esthetic[s] services may be offered or performed until properly licensed and approved."

97. Two days later, on January 23, 2026, the investigator responded to Brandi's email explanation, notifying Brandi that the complaint had "been reviewed" and "subsequently closed."

98. A letter attached to the investigator's email explained:

> As you are aware, a complaint was filed against you for violations of the § 40-13-5 [et seq.], practice act. Based upon the particular facts and circumstances developed by the evidence in the investigation, it was determined that the violation alleged in the complaint could not be established. As a result, the case against you will be closed, with no action taken against you.

99. In the body of the email, the investigator did "caution" Brandi that, "per statute, a salon is defined as 'a building or any place, or part of place or building including, but not limited

to, a rental booth, in which cosmetology is performed on the general public for compensation.'" And that "cosmetology services may only be offered in a licensed salon by a licensed individual."

100. In other words, the investigator reiterated that mobile esthetics salons are banned. The only reason the investigation was "closed" was because Brandi was not operating out of a mobile salon.

101. The investigator's comments make clear that the Board would take action against Brandi if she did operate out of a mobile salon.

102. While this was going on, Brandi was preparing for her licensure examination, which includes both a written portion and a practical portion. She took the written portion on January 22, 2026, and the practical portion on January 27, 2026. She passed.

103. The exam that Brandi took is administered by the National Interstate Council of State Boards of Cosmetology (NIC).

104. The written portion of the exam focuses, among other things, on scientific concepts related to sanitation and the healthful provision of esthetics services like infection control, safety procedures (including universal precautions, blood exposure precautions, or handling of chemicals), human physiology and anatomy, skin histology and anatomy, and skin disorders and diseases. *See* Esthetics Theory Examination Content Outline, https://perma.cc/9PZZ-XBFB.

105. The practical portion of the exam tests the candidate's ability to prepare their work area and provide various esthetician services—facials, brows, and make-up—well and follow proper sanitation and health procedures. *See* Esthetics Practical Examination Content Outline, https://perma.cc/V8Q3-EWF7. It tests, for example, that candidates properly disinfect instruments, sanitize their hands, and dispose of items to be disinfected, soiled linens, and any trash. *Id.* The exam specifically tests blood exposure procedures, evaluating candidates on things like usage of

the first aid kit, wearing gloves, cleaning the wound, and disposing of all contaminated materials. *Id.*

106. By passing the exam, Brandi demonstrated that she knows well and can practically implement the sanitation procedures that are the standard of care for estheticians, including all South Carolina-licensed estheticians.

107. On January 30, 2026, Brandi got her license. But her dream of running a mobile salon had been shattered.

108. Despite being licensed, she did not open the mobile beauty salon she had dreamed of and had been working toward. She now knew about the ban on mobile beauty services and had already faced enforcement threats and an investigation from the Cosmetology Board.

109. So Brandi pivoted. She spoke to a friend who owns a salon and started renting a booth from her. Brandi now works out of a booth at the Vella Spa, where she currently provides all of the Cosmetology Board-regulated services she offers.

110. Brandi's clients enjoy her services and her professional and optimistic demeanor, though they'd love the convenience of accessing all of her services in her mobile unit.

111. Rather than use her RV as a full beauty studio, Brandi uses it for spray tans, which constitute only approximately 10% of her business and which the Cosmetology Board has confirmed are unregulated.

112. Though Brandi has made the situation work, it isn't ideal.

113. Brandi does not want to rent booth space long-term. Having to rent booth space is burdensome and adds to her operating costs. Rent alone costs her an additional $700 per month, a significant expense for a small business.

114. While the arrangement works for now, she would much rather be able to work for herself and to run her mobile salon as a standalone business, exactly as she planned and worked for (and what her clients want).

115. If Brandi were a licensed barber, she could work out of a mobile barbershop or through a portable barbering operation. But because she is a licensed esthetician, she cannot work out of a mobile salon or through a portable esthetics operation.

116. That's even though Brandi's RV satisfies the health and safety standards South Carolina has determined are necessary to safely provide barbering services.

117. For example, mobile barbershops must have cabinets, storage for clean and soiled towels, adequate access to hot and cold water, and a fire extinguisher. S.C. Code Ann. Regs. § 17-21(c); *id.* § 17-50(5)–(6). Brandi's RV meets each of these requirements.

118. The only reason Brandi cannot operate her business out of her RV is that she wants to provide esthetics services rather than barbering services, even though there is significant overlap between the two.

119. Mobile salons and portable beauty services are not allowed.

120. Brandi—and other estheticians like her—must either work in a fixed-location salon or not at all.

***South Carolina's ban on mobile and portable-operation esthetics is irrational.***

121. There is no rational basis for banning mobile or portable-operation esthetics. Any basis Defendants might offer is already addressed by other regulations imposed on esthetics.

122. If the practice of esthetics were unsafe outside of a fixed location, then it would follow that similar occupations—like barbering—would also have similar prohibitions. But that is not the case. Mobile and portable-operation barbering are allowed in South Carolina.

123. Estheticians and barbers both provide facial massages and treatments. *Compare* S.C. Code Ann. § 40-13-20(2) (defining cosmetology to include "using cosmetic preparations, . . . lotions, creams, . . . on, or otherwise, or . . . stimulating, manipulating, beautifying, or similar work on the . . . face"), *and id.* § 40-13-20(5) (defining esthetics to include "skin care, make-up, or similar work" like facials), *with id.* § 40-7-20(1)(b) (defining barbering to include "giving facial . . . massages or treatments with oils, creams, lotions, or other preparations, either by hand or mechanical appliances").

124. There is no meaningful health or safety difference between massaging skincare products onto the face as part of a facial and massaging oils onto the face as part of a beard trim.

125. Estheticians and barbers both apply cosmetic preparations and various other products to the face or neck. *Compare* S.C. Code Ann. § 40-13-20(2)(b) (defining cosmetology to include "using cosmetic preparations, make-up . . . on, or otherwise, or . . . beautifying, or similar work on the . . . face [or] neck"), *and id.* § 40-13-20(5) (defining esthetics to include "skin care, make-up, or similar work"), *with id.* § 40-7-20(1)(d) (defining barbering to include "applying cosmetic preparations, antiseptics, powders, oils, clays, and lotions to the scalp, neck, or face").

126. There is no meaningful health or safety difference between applying make-up to the face and applying cosmetic preparations or powders to the face.

127. Estheticians and barbers both shape or remove facial hair. *Compare* S.C. Code Ann. § 40-13-20(2)(b) (defining cosmetology to include "waxing, tweezing, . . . or similar work on the . . . face"), *with id.* § 40-7-20(1)(a) ("shaving or trimming a beard").

128. There is no meaningful health or safety difference between removing hair to shape eyebrows and removing hair to shape beards.

129. In fact, South Carolina law implicitly recognizes that there is no meaningful health or safety difference between barbering and cosmetology. It regulates the two in nearly identical ways.

130. Barbers must wash their hands and sanitize equipment between clients. Estheticians must wash their hands and sanitize equipment between clients.

131. Barbers must maintain their products and instruments in a clean and sanitary manner. Estheticians must maintain their products and instruments in a clean and sanitary manner.

132. Barbers must refrain from providing services to customers with known contagious conditions. Estheticians must refrain from providing services to customers with known contagious conditions.

133. Barbers must have access to hot and cold water and to a first aid kit. Estheticians must have access to hot and cold water and to a first aid kit.

134. Aside from the provisions challenged here, there is nothing in state law or regulation indicating that the state views cosmetology generally, or esthetics specifically, as presenting a greater risk to public health or safety than barbering.

135. Each of the justifications Defendants may proffer for the ban is both already addressed by the licensing and enforcement scheme and belied by the preferential treatment—permitting mobile and portable services—that barbering receives.

*There is no rational health or safety basis for the ban.*

136. There are no health or safety concerns that would rationally justify banning mobile and portable esthetics while encouraging mobile and portable barbers.

137. The fixed-location requirement does not further any health and safety justifications. South Carolina's licensing requirements already ensure that licensed estheticians meet reasonable sanitation and other health and safety standards.

138. The coursework that licensees take covers topics like infection control, sanitation and safety, service protocols, and other scientific and technical areas of esthetics.

139. The exam that licensees must pass also focuses on ensuring that licensed estheticians possess the necessary knowledge and skills to provide all of their services sanitarily and healthfully. The written portion of the exam specifically tests scientific concepts related to sanitation and the healthful provision of esthetics services. And the practical portion of the exam tests that candidates can actually apply those concepts to real clients. The practical portion of the exam tests, among other things, that candidates properly disinfect instruments and sanitize their hands, and even specifically tests blood exposure procedures.

140. By earning their licenses, South Carolina estheticians show that they possess the knowledge and skills to provide their services in a sanitary manner, whether in a fixed-location salon or not.

141. South Carolina law and regulations also already impose extensive sanitation and health and safety requirements on esthetics.

142. South Carolina regulations require that esthetic salons maintain sufficient disinfectant to ensure implements can be totally submerged and disinfected, S.C. Code Ann. Regs. § 35-16(A)(1); have containers to dispose of the used or contaminated implements, *id.* § 35-16(A)(2); have access to hot and cold running water and storage for clean and soiled linen, *id.* § 35-16(B)(1), (3), (4); and have equipment necessary to provide esthetics services "in a safe and sanitary manner," *id.* § 35-16(B).

143. South Carolina regulations also ensure that all estheticians are liable for the "maintenance of the sanitary rules applicable to them," S.C. Code Ann. Regs. § 35-20(A)(1), which include requirements for handwashing, tool sterilization, discarding towels between customers and single-use implements and products, and abstaining from serving customers with contagious conditions, *see generally id.* § 35-20.

144. Licensed estheticians are just as capable of following all of these or very similar health and safety and sanitation requirements while providing mobile or portable operations as they are in a fixed-location salon.

145. In fact, a narrow exception to the fixed-location requirement allows an esthetician to work outside of a fixed-location salon when a customer suffers "illness [or] invalidism." S.C. Code Ann. § 40-13-110(A). In other words, the statutes recognize that these professionals can provide their services healthfully even outside of a fixed-location salon to the customers most vulnerable to unsafe or unsanitary services.

146. In other words, the regulatory requirements already imposed on estheticians ensure they can provide their services while meeting health and safety standards.

147. Mobile esthetics presents no greater risk to the public health and safety than the same services performed in a fixed-location salon.

148. There is no evidence that the Cosmetology Board's existing sanitation framework could not be applied, with reasonable modification, to esthetics services performed in mobile salons or through portable salon operations.

149. Nor is there a health and safety rationale for the fixed-location esthetics requirement while allowing mobile and portable barbering.

150. South Carolina regulations on barbering show that the same sanitation and health and safety requirements can be applied to fixed-location and mobile personal appearance occupations. The regulations explicitly require mobile barbershops to "comply with all sanitary rules" imposed on fixed-location barbershops. S.C. Code Ann. Regs. § 17-50. And those sanitary rules are similar to the ones imposed on estheticians.

151. South Carolina regulations on barbering also show that portable-operation barbers can follow sanitation requirements very similar to those imposed on fixed-location barbers—things like handwashing, having sanitary instruments and clean towels, having a sufficient disinfectant, having a means of storing clean and used instruments separately, and having an adequate supply of hot and cold running water. S.C. Code Ann. Regs. § 17-22(c), (d). Those sanitary requirements are similar to the ones imposed on estheticians.

152. Simply put, mobile and portable-operation barbering present the same or similar sanitation and health and safety concerns as mobile or portable-operation esthetics, yet they are permitted under a set of regulations that mobile or portable-operation esthetics could easily comply with.

153. Mobile esthetics presents no greater risk to the public health and safety than mobile barbering.

154. The services estheticians provide present no greater risk of infection or injury than the services barbers are already permitted to provide outside of a fixed location.

155. Clients receiving esthetics services in mobile salons or through portable salon operations do not face sanitation risks different from clients receiving barbering services in mobile barbershops or through portable barbershop operations.

156. There is no evidence that estheticians are any less capable than barbers of following sanitation regulations and industry best practices when operating outside of a fixed-location salon.

157. Estheticians are no less capable than barbers of following reasonable regulations on services performed outside of a fixed location.

*There is no rational inspection or enforcement basis for the ban.*

158. Concerns over inspections and enforcement are not a rational basis on which to ban mobile or portable-operation esthetics salons.

159. The fixed-location requirement does not further any inspection or enforcement justifications.

160. Increased difficulty in conducting inspections or enforcement against non-fixed-location esthetics services is not a rational basis for the ban because mobile and portable-operation salons can be similarly inspected and can (and have been) enforced against.

161. The same or similar inspection requirements that are imposed on fixed-location esthetics can be imposed on mobile or portable-operation esthetics. Just as fixed-location esthetics salons must provide access to inspectors and pass inspection, S.C. Code Ann. Regs. § 35-20(A)(3), (5), so too can mobile or portable-operation esthetic salons.

162. Additionally, the Cosmetology Board has shown that it can enforce applicable laws and regulations against mobile or portable-operation esthetics. The Board already showed it could identify and investigate individuals without a fixed-location salon. The Board and LLR already investigated Brandi based on a social media post without any need for a fixed business address. Individual registration and licensure, not a fixed location, is what makes a provider identifiable and enforcement feasible.

163. The Cosmetology Board's existing inspection framework could be applied, with reasonable modification, to esthetics services performed in mobile salons or through portable salon operations.

164. There is no inspection or enforcement rationale for the fixed-location esthetics requirement while allowing mobile and portable barbering.

165. South Carolina regulations on barbering show that the same or similar inspection and enforcement requirements can be applied to fixed-location and mobile or portable-operation personal appearance occupations.

166. Under the regulations, barbershops—including both fixed-location and mobile barbershops—must "be open for inspection at all times during business hours to any members of the Board of Barber Examiners, or its agents or assistants." S.C. Code Ann. Regs. § 17-50(1). *See also id.* § 17-50(21)–(22) (elaborating on the inspection regime).

167. And the regulations also provide an inspection mechanism for portable-operation barbering: "A portable barber shall maintain a written or electronic record of the street addresses where barbering services will be provided during any two-week period at the designated base of operations. These records are subject to inspection by the Board." S.C. Code Ann. Regs. § 17-22(e).

168. Mobile and portable-operation barbering present the same or similar inspection and enforcement concerns as mobile or portable-operation esthetics. Mobile or portable-operation esthetics could easily comply with the regulatory framework for inspection and enforcement that the state created for mobile or portable-operation barbering. The state nevertheless allows the latter while banning the former.

169. The Cosmetology Board is no less capable than the Board of Barber Examiners of adopting reasonable inspection requirements on services performed outside of a fixed location.

170. The Cosmetology Board is no less capable than the Board of Barber Examiners of enforcing reasonable regulations on services performed outside of a fixed location.

171. LLR could enforce regulations on mobile esthetics comparable to the regulations it enforces on mobile barbering.

172. An inspection regime—such as the mobile and portable-operation models already used to regulate barbering—would be adequate if applied to mobile or portable esthetics.

*There is no rational consumer protection basis for the ban.*

173. Consumer protection is not a rational basis on which to ban mobile or portable-operation esthetics salons.

174. The fixed-location requirement does not further consumer protection justifications.

175. There is no reason to believe that mobile or portable-operation esthetics salons present a greater threat to consumers than fixed-location esthetics salons.

176. As already noted, *see supra* ¶¶ 136–48, mobile and portable-operation esthetic salons are just as capable of meeting sanitation and health and safety requirements as fixed-location salons. The same is true with inspection and enforcement. *See supra* ¶¶ 158–63. But even if that weren't the case, the regulations already imposed on estheticians are sufficient to ensure that consumers have somewhere to go if something goes wrong.

177. The process through which LLR reviews complaints runs through the individual service provider, not through a physical address. In fact, this is highlighted by the fact that the Board and LLR already reviewed and investigated a complaint against Brandi, who was at the time a not-yet-licensed individual, without any need for a fixed business address.

178. That means aggrieved consumers can file complaints against mobile or portable-operation estheticians just the same as they would against fixed-location estheticians.

179. There is no evidence that mobile or portable-operation esthetics present a greater consumer protection risk than the same services performed in a fixed-location salon.

180. There is no evidence that LLR's existing licensee-verification system, which allows consumers to verify the license and disciplinary history of any cosmetology, esthetics, or barbering licensee online, is inadequate to protect consumers who receive services from a mobile or portable-operation esthetician.

181. Nor is there any consumer protection rationale for the fixed-location esthetics requirement while allowing mobile and portable barbering.

182. Due to the similarity of the practices that encompass esthetics and barbering, *see supra* ¶ 25, any consumer protection concerns would be the same for both practices, yet mobile and portable-operation barbering are allowed under a set of regulations that mobile or portable-operation esthetics could easily comply with.

183. The services estheticians provide do not present a greater consumer protection risk than the services barbers are already permitted to provide outside of a fixed location.

184. Consumers are no less able to identify, locate, or hold accountable a mobile or portable-operation esthetics salon than a mobile or portable-operation barbershop.

185. There is no evidence that a licensed esthetician operating outside of a fixed-location salon is any harder for LLR—or for a consumer—to identify or locate than a licensed barber operating outside of a fixed-location barbershop.

186. Requirements comparable to those imposed on mobile or portable-operation barbers would be sufficient to allow consumers to identify and locate a mobile or portable-operation esthetician.

187. There is no evidence that a consumer's ability to file a complaint against, or verify the licensure of, a mobile or portable-operation esthetician would be any different from a consumer's ability to do so for a mobile or portable-operation barber.

**INJURY TO PLAINTIFF**

188. Brandi's dream is to be her own boss and operate a luxury mobile beauty studio providing beauty services. A licensed beauty professional, she wants to provide mobile beauty services for which there's great demand from both locals and tourists, and she has all of the knowledge, skills, and tools to do it well and safely. But South Carolina's irrational requirement that estheticians work only in fixed-location salons infringes on Brandi's rights under the Fourteenth Amendment. But for that requirement, Brandi would be operating her mobile beauty studio and offering portable-operation esthetics services right now.

189. South Carolina's requirement that beauty professionals must work in fixed-location salons means that Brandi cannot provide all of the services she is qualified to provide in her mobile beauty studio or through a portable operation.

190. Brandi invested thousands of dollars in her mobile beauty studio. But because she cannot provide services that the Cosmetology Board regulates as part of the practice of esthetics at the mobile beauty studio, she cannot receive the full benefit of her investment.

191. And since the requirement means that she needs to rent booth space to work, each month Brandi has to pay $700 to maintain her booth even though she owns a mobile beauty studio fully equipped to safely provide all of her services. That increases her expenses and lowers her revenue—a concrete and ongoing injury.

192. When Brandi announced her graduation and business plan, many throughout Greenville expressed their congratulations and excitement for the mobile beauty studio. There are many potential customers that would love to be able to access Brandi's mobile esthetics services and would do so if it were permitted. Though some of those potential customers may visit Brandi at the salon she is currently working in, they would prefer the convenience of the mobile studio or portable services. Brandi loses clients because she cannot provide her services in the manner most convenient for them, especially in light of the competition from barbers that may provide similar mobile or portable services and from the gray market for make-up and other beauty services. But for the fixed-location salon requirement, she would not lose those customers because she would be able to provide her services in the manner most convenient for them.

193. Because of the fixed-location salon requirement, Brandi also loses customers because she cannot travel to provide her services for events like weddings, parties, and fashion shoots or shows. Instead, such events receive services through the gray market. But for the fixed-location salon requirement, Brandi would provide beauty services for such events and, thus, would not lose those customers.

194. The fixed-location salon requirement imposes needless costs and burdens on Brandi and other estheticians that put them at an unjustified competitive disadvantage. Unlike barbers, who are permitted to operate in mobile or portable barbershops, estheticians are forced to expend the capital to buy or rent a fixed-location salon. The fixed-location salon requirement makes it much harder for estheticians to follow their dreams in a competitive industry. The disparity discourages esthetics entrepreneurship while encouraging barbering entrepreneurship.

195. Brandi is suffering continuing harm every day that she cannot offer all of her services at her mobile beauty studio or through a portable operation. She is not recouping the full

value of her investment and faces increased costs and decreased revenue from having to rent a salon booth. She is also losing out on customers that would love to work with Brandi but for whom traveling to the salon is inconvenient or unfeasible.

196. Brandi is also suffering continuing harm because the fixed-location salon requirement prevents her from exercising her historically rooted right to earn an honest living.

## CLAIMS FOR RELIEF

### First Claim for Relief – Equal Protection

197. Plaintiff incorporates paragraphs 1 through 196.

198. The Fourteenth Amendment to the U.S. Constitution provides that no state may "deny to any person within its jurisdiction the equal protection of the laws."

199. Equal protection of the laws means that the government cannot irrationally subject similarly situated people to different rules.

200. South Carolina lacks a rational basis for treating mobile and portable esthetics differently from mobile and portable barbering.

201. The statutory definitions of esthetics and barbering substantially overlap and cover services whose public health and safety implications are materially identical.

202. In practice, estheticians and barbers perform many of the same services—things like removing facial hair, massaging faces, and applying cosmetic products to the face and neck.

203. Estheticians and barbers also follow many of the same regulatory cleanliness and sanitation standards—things like disinfecting and sterilizing instruments, disposing of towels between customers, washing hands between customers, ensuring access to hot and cold running water, and passing inspections.

204. In fact, the ban on mobile and portable cosmetology services, including esthetics, is the only significant way in which South Carolina treats esthetics differently from barbering,

highlighting the fact that the state legislature and relevant regulators view the two professions as similarly situated.

205. Just as a barber can follow sanitation practices while working from a mobile or portable unit, so can Brandi and other estheticians. Just like a mobile barber, Brandi could, for example, properly disinfect and sterilize instruments and follow all requirements for facilities and equipment maintenance.

206. There is no rational basis to treat esthetics worse than barbering by requiring estheticians to offer their services in fixed-location salons but allowing barbers to offer their services in mobile barbershops or portable operations.

207. Because the ban on mobile beauty services irrationally treats similarly situated groups of people differently, it violates the Equal Protection Clause.

208. Unless Defendants are enjoined from enforcing S.C. Code Ann. § 40-13-110(A)(6) and S.C. Code Ann. Regs. § 35-20(B)(1) against Brandi, she will suffer continuing and irreparable harm.

**Second Claim for Relief – Due Process**

209. Plaintiff incorporates paragraphs 1 through 196.

210. The Fourteenth Amendment to the U.S. Constitution provides that no state may "deprive any person of life, liberty, or property, without due process of law[.]"

211. The substantive component of the Fourteenth Amendment's Due Process Clause includes the right to earn an honest living by pursuing a chosen business.

212. Due process requires that state regulations on a person's chosen business must be rationally related to a legitimate governmental interest.

213. South Carolina's prohibition on mobile esthetics is not rationally related to any legitimate governmental interest.

214. The requirement that estheticians must offer their services in a fixed-location salon is not based on reasonable concerns related to health or safety.

215. Estheticians are just as capable of following all the necessary sanitation procedures in a mobile salon or portable operation as they are in a fixed-location salon—as evidenced by the fact that barbers can and do follow their sanitation procedures (which are functionally the same as those estheticians follow) in both fixed-location and mobile barbershops. Brandi and other estheticians will not forget their training or be blocked from applying their training just because they offer their services in a mobile or portable salon rather than a fixed-location salon.

216. The requirement that estheticians provide their services in fixed-location salons also has certain exceptions that highlight it has no rational relationship to health and safety. Under one exception, an esthetician can work outside of a fixed-location salon when a customer suffers "illness [or] invalidism." S.C. Code Ann. § 40-13-110(A). In other words, the statutes recognize that these professionals can provide their services healthfully even outside of a fixed-location salon to the customers most vulnerable to unsafe or unsanitary services.

217. Under another exception, an esthetician "may practice, within the scope authorized by the person's license, in a barbershop registered in accordance with [the] chapter," S.C. Code Ann. § 40-7-285, and the barbering board treats mobile barbershops the same as fixed-location barbershops. S.C. Code Ann. Regs. § 17-50. This suggests that an esthetician may be permitted to practice in a mobile barbershop (but not a salon).

218. There is no evidence—and Defendants will be unable to produce any evidence—that banning Brandi and other licensed estheticians from serving customers outside of a fixed-location salon rationally serves the public health or safety, or any other valid governmental interest.

219. Because the ban on mobile salons is not rationally related to any legitimate government interest, it violates the Due Process Clause.

220. Unless Defendants are enjoined from enforcing S.C. Code Ann. § 40-13-110(A)(6) and S.C. Code Ann. Regs. § 35-20(B)(1) against Brandi, she will suffer continuing and irreparable harm.

**Third Claim for Relief – Privileges or Immunities**

221. Plaintiff incorporates paragraphs 1 through 196.

222. The Fourteenth Amendment to the U.S. Constitution provides "[n]o State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States[.]"

223. The Privileges or Immunities Clause, properly interpreted, protects the right to earn a living free from unreasonable state regulations.

224. South Carolina's prohibition on mobile cosmetology is an unreasonable regulation that infringes on Brandi's right to earn a living because it prevents her from offering her services in the manner she deems fit without serving any legitimate health and safety goal.

225. Plaintiff recognizes that this claim is currently foreclosed by the *Slaughter-House Cases*, 83 U.S. (16 Wall.) 36 (1873). She preserves it here given the "overwhelming consensus among leading constitutional scholars" that *Slaughter-House* was "egregiously wrong." *McDonald v. City of Chicago*, 561 U.S. 742, 756–57 (2010) (noting argument made in brief of Constitutional Law Professors as Amici Curiae, Docket No. 08-1521, 561 U.S. 742 (filed July 9, 2009)).

## REQUEST FOR RELIEF

Brandi respectfully requests:

A. A declaratory judgment that, facially and as applied to Brandi Rosemond, South Carolina's ban on mobile and portable esthetics services, S.C. Code Ann. § 40-13-110(A)(6) and S.C. Code Ann. Regs. § 35-20(B)(1), violates the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution;

B. A declaratory judgment that, facially and as applied to Brandi Rosemond, South Carolina's ban on mobile and portable esthetics services, S.C. Code Ann. § 40-13-110(A)(6) and S.C. Code Ann. Regs. § 35-20(B)(1), violates the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution;

C. A declaratory judgment that, facially and as applied to Brandi Rosemond, South Carolina's ban on mobile and portable esthetics services, S.C. Code Ann. § 40-13-110(A)(6) and S.C. Code Ann. Regs. § 35-20(B)(1), violates the Privileges or Immunities Clause of the Fourteenth Amendment to the U.S. Constitution;

D. A permanent injunction prohibiting Defendants from enforcing South Carolina's ban on mobile or portable esthetics services, S.C. Code Ann. § 40-13-110(A)(6) and S.C. Code Ann. Regs. § 35-20(B)(1);

E. An award of attorneys' fees, costs, and expenses under 42 U.S.C. § 1988; and

F. Any further legal and equitable relief that the Court deems just and proper.

DATED this 8th day of September 2026.

Respectfully submitted,

/s/ Christopher Mills
Christopher Mills (Fed. Bar No. 13432)
Spero Law LLC
557 East Bay Street # 22251
Charleston, SC 29413
(843) 606-0640
cmills@spero.law

*Local Counsel for Plaintiff*

Katrin Marquez (FL Bar No. 1024765)*
Institute for Justice
2 South Biscayne Blvd., Suite 3180
Miami, FL 33131
(305) 721-1600
kmarquez@ij.org

Jessica Bigbie (TX Bar No. 24134429)*
Institute for Justice
816 Congress Ave., Suite 970
Austin, TX 78701
(512) 480-5936
jbigbie@ij.org

Joshua Windham (NC Bar No. 51071)*
Institute for Justice
901 N. Glebe Rd., Suite 900
Arlington, VA 22203
(703) 682-9320
jwindham@ij.org

*Attorneys for Plaintiff*
** Pro hac vice applications forthcoming*